**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| HAVASUPAI TRIBE,<br>        *Plaintiff-Appellant*,<br><br>and<br><br>GRAND CANYON TRUST;<br>CENTER FOR BIOLOGICAL<br>DIVERSITY; SIERRA CLUB,<br>        *Plaintiffs*,<br><br>v.<br><br>HEATHER PROVENCIO, Forest<br>Supervisor, Kaibab National<br>Forest; UNITED STATES FOREST<br>SERVICE, an agency in the U.S.<br>Department of Agriculture,<br>        *Defendants-Appellees*,<br><br>ENERGY FUELS RESOURCES<br>(USA), INC.; EFR ARIZONA<br>STRIP LLC,<br>        *Intervenor-Defendants-<br>Appellees.* | No. 15-15754<br><br>D.C. No.<br>3:13-cv-08045-DGC |

GRAND CANYON TRUST;
CENTER FOR BIOLOGICAL
DIVERSITY; SIERRA CLUB,
        *Plaintiffs-Appellants*,

and

HAVASUPAI TRIBE,
                *Plaintiff*,

v.

HEATHER PROVENCIO, Forest
Supervisor, Kaibab National
Forest; UNITED STATES FOREST
SERVICE, an agency in the U.S.
Department of Agriculture,
        *Defendants-Appellees*,

ENERGY FUELS RESOURCES
(USA), INC.; EFR ARIZONA
STRIP LLC,
        *Intervenor-Defendants-
                Appellees.*

No. 15-15857

D.C. No.
3:13-cv-08045-DGC

ORDER AND
OPINION

Appeal from the United States District Court
for the District of Arizona
David G. Campbell, District Judge, Presiding

Argued and Submitted December 15, 2016
San Francisco, California

Filed October 25, 2018

Before: Marsha S. Berzon and Mary H. Murguia, Circuit Judges, and Frederic Block, District Judge.[*]

Order;
Opinion by Judge Block

## SUMMARY[**]

### Mining Rights

The panel withdrew the opinion filed December 12, 2017, and filed a new opinion that affirmed with one exception the district court's rejection of challenges to the determination by the United States Forest Service that Energy Fuels Resources (USA), Inc., and EFR Arizona Strip LLC had an existing right to operate a uranium mine on land around Grand Canyon National Park.

In 1988, the Forest Service approved a plan to build and operate what became known as Canyon Mine, a 17.4 acre uranium mine in and around Red Butte. In *National Mining Association v. Zinke*, 877 F.3d 845 (9th Cir. 2017), the court upheld the 2012 decision of the Secretary of the Interior to withdraw, for twenty years, more than one million acres of

[*] The Honorable Frederic Block, United States District Judge for the Eastern District of New York, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

public lands around Grand Canyon National Park from new mining claims. The withdrawal did not extinguish "valid existing rights." On April 18, 2012, the Forest Service issued a Mineral Report with findings; and based on those findings, the Forest Service concluded that Energy Fuels had a "valid existing right" to mine within the withdrawal area. The Havasupai Tribe and environmental groups challenged the determination.

The panel rejected the Forest Service's argument that the court lacked jurisdiction. The panel held that the Forest Service's Mineral Report was a final agency action. The panel further held that the Mineral Report's conclusion that Energy Fuels had valid existing rights at the time of the withdrawal fell within the plain meaning of "recognition of a claim." 5 U.S.C. § 551(11)(B).

The panel held that the environmental impact statement prepared in 1988 satisfied the National Environmental Policy Act. The panel further held that the district court properly applied *Center for Biological Diversity v. Salazar*, 706 F.3d 1085 (9th Cir. 2013). As in that case, the original approval of the plan of operations in 1988 was a major federal action, and the resumed operation of Canyon Mine did not require any additional government action.

The National Historical Preservation Act requires consultation pursuant to section 106 prior to any "undertaking." 54 U.S.C. § 306108. The panel held that Red Butte was not a "historic property" eligible for inclusion on the National Register until 2010, and as a result, the Act did not obligate the Forest Service to take the site into account when it conducted a full section 106 consultation in 1986. The panel further held that the current definition of

"undertaking" did not encompass a continuing obligation to evaluate previously approved projects. The panel concluded that the 2012 Mineral Report was not an "undertaking" requiring consultation under the Act.

The Federal Land Policy and Management Act of 1976 ("FLPMA") confers on the Secretary of the Interior authority to withdraw federal lands for specified purposes, but makes that authority "subject to valid existing rights." Plaintiffs challenged the merits of the Forest Service's conclusion that Energy Fuels had "valid existing rights" predating the withdrawal because its predecessors-in-interest had discovered a deposit of minable uranium ore. The district court looked to the General Mining Act of 1872 to make its valid existing rights determination. The panel held that the FLPMA, and not the Mining Act, formed the legal basis of plaintiff's claim that Canyon Mine should not be exempt from the withdrawal because the valid existing right determination was in error. The panel vacated the district court's judgment with respect to this claim, and remanded for consideration on the merits.

## COUNSEL

Richard W. Hughes (argued) and Reed C. Bienvenu, Rothstein Donatelli LLP, Santa Fe, New Mexico, for Plaintiff-Appellant Havasupai Tribe.

Neil Levine (argued), Law Office of Neil Levine, Denver, Colorado; Aaron Paul, Grand Canyon Trust, Denver, Colorado; Marc Fink, Center for Biological Diversity, Duluth, Minnesota; Roger Flynn, Western Mining Action Project, Lyons, Colorado; for Plaintiffs-Appellants Grand

Canyon Trust, Center for Biological Diversity, and Sierra Club.

Thekla Hansen-Young (argued), Jared S. Pettinato, Michael T. Gray, and Andrew C. Mergen, Attorneys; Jeffrey H. Wood, Acting Assistant Attorney General; Environment & Natural Resources Division, United States Department of Justice, Washington, D.C.; Nicholas L. Pino and Pamela P. Henderson, Attorneys; Stephen Alexander Vaden, Principal Deputy General Counsel; Office of General Counsel, United States Department of Agriculture; for Defendants-Appellees.

David J. DePippo (argued), Hunton & Williams LLP, Richmond, Virginia; Michael K. Kennedy and Bradley J. Glass, Gallagher & Kennedy P.A., Phoenix, Arizona; for Intervenor-Defendants-Appellees.

Eric Biber, Professor of Law, Berkley Law, Berkeley, California, for Amici Curiae Environmental and Natural Resource Law Professors.

### ORDER

Judges Berzon and Murguia have voted to deny the petitions for rehearing en banc, and Judge Block so recommends. The full court has been advised of the petitions and no judge has requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 35. Accordingly, the petitions for rehearing en banc are **DENIED**.

The Opinion filed December 12, 2017, appearing at 876 F. 3d 1242 (9th Cir. 2017), is withdrawn. It may not be cited as precedent by or to this court or any district court of the

Ninth Circuit. A new opinion is being filed concurrently with this order. Further petitions for rehearing or rehearing en banc may be filed.

---

## OPINION

BLOCK, District Judge:

In *National Mining Association v. Zinke*, 877 F.3d 845 (9th Cir. 2017), we upheld the decision of the Secretary of the Interior to withdraw, for twenty years, more than one million acres of public lands around Grand Canyon National Park from new mining claims. That withdrawal did not extinguish "valid existing rights." In these consolidated appeals, we consider challenges by the Havasupai Tribe ("the Tribe") and three environmental groups—Grand Canyon Trust, Center for Biological Diversity and Sierra Club (collectively, "the Trust")—to the determination of the United States Forest Service (the "Forest Service") that Energy Fuels Resources (USA), Inc., and EFR Arizona Strip LLC (collectively, "Energy Fuels") had a valid existing right to operate a uranium mine on land within the withdrawal area. As elaborated below, we affirm, with one exception, the district court's order rejecting those challenges.

## I

Much of what we said in *National Mining Association* concerning the history of uranium mining in the area and the Secretary's withdrawal decision is also relevant here. To that we add some additional background regarding the particular mine at issue in this case.

Grand Canyon National Park is bordered to the north and south by the Kaibab National Forest. The southern portion of the forest—which is included in the withdrawal area—contains Red Butte, a site of religious and cultural significance to the Tribe.

In 1988, the Forest Service approved a plan to build and operate what became known as Canyon Mine, a 17.4-acre uranium mine in the area around Red Butte. During the approval process, the Forest Service prepared an Environmental Impact Statement ("EIS") pursuant to the National Environmental Policy Act of 1969 ("NEPA"). NEPA requires an EIS for any "major Federal action[] significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C).

At that time, the Forest Service also addressed the mine's impact under the National Historic Preservation Act of 1966 ("NHPA"). Section 106 of the NHPA requires federal agencies, prior to issuing a license for any "undertaking," to "take into account the effect of the undertaking on any [historic property]." Pub. L. No. 89-665, § 106 (codified, as amended, at 54 U.S.C. § 306108). Historic property is defined as "any prehistoric or historic district, site, building, structure, or object included on, or eligible for inclusion on, the National Register." 54 U.S.C. § 300308. Based on its review, the Forest Service required mitigation measures to minimize the impact on possible relics buried on the site of the mine. The review did not include nearby Red Butte because that site was not eligible for inclusion on the National Register until 1992. *See* National Historical Preservation Act Amendments of 1992, Pub. L. No. 102-575, tit. XL, § 4006 (making "[p]roperties of traditional religious and cultural importance to an Indian tribe" eligible for inclusion on the

National Register).  The EIS, however, did address the tribal religious significance of Red Butte.

The Tribe sought judicial review, but both the district court and this Court rejected the challenge.  *See Havasupai Tribe v. United States*, 752 F. Supp. 1471 (D. Ariz. 1990), *aff'd sub nom. Havasupai Tribe v. Robertson*, 943 F.2d 32 (9th Cir. 1991), *cert. denied*, 503 U.S. 959 (1992).  The mine operator built surface facilities and sank the first fifty feet of a 1,400-foot shaft, but placed the mine on "standby" status in 1992 due to the  unfavorable conditions in the uranium market that we described in *National Mining Association*.

As noted, the Secretary's withdrawal decision was "subject to valid existing rights."  77 Fed. Reg. 2563 (Jan. 18, 2012).  A few months before the decision became final, Energy Fuels—which had become Canyon Mine's owner—notified the Forest Service that it intended to return the mine to active operations.  At the Service's request, Energy Fuels agreed not to resume sinking the mineshaft pending review of its claim of existing rights.

On April 18, 2012, the Forest Service issued a "Mineral Report."  It found that Energy Fuels' predecessors-in-interest had "located" mining claims at the site in 1978 and "discovered" uranium ore there between 1978 and 1982.  It further found that there were 84,207 tons of uranium ore on the site, and that "under present economic conditions, the uranium deposit on the claims could be mined, removed, transported, milled and marketed at a profit."  Based on those findings, the Forest Service concluded that Energy Fuel had "valid existing rights that were established prior to the mineral withdrawal."

The Forest Service also reviewed its 1988 decision, including its EIS and the mine's approved plan of operations ("PoO"), "for any changes in laws, policies or regulations that might require additional federal actions to be taken before operations resume." In a "Mine Review" dated June 25, 2012, it concluded that the existing PoO was "still in effect and no amendment or modification to the PoO is required before Canyon Mine resumes operations under the approved PoO." It further concluded that "[n]o new federal action subject to further NEPA analysis is required for resumption of operations of the Canyon Mine."

With respect to historic preservation, the Mine Review concluded that "there will be no new federal undertakings subject to NHPA Section 106 compliance." It noted, however, that Red Butte had become eligible for inclusion on the National Register, and opined that the site "could be considered a newly 'discovered' historic property." Applying the regulation applicable to such discoveries, 36 C.F.R. § 800.13(b)(3), the Forest Service immediately contacted the Tribe to "enter into government-to-government consultation" to "develop 'actions' to resolve or minimize the adverse effects" on Red Butte. In response, the Tribe insisted on a revised PoO, a supplemental EIS and a full consultation under section 106 of the NHPA. The Forest Service and the Tribe continued to correspond, but never settled on a specific plan of action. The Mine Review alludes to the likely reason: "Tribes have commented that most anticipated impacts, including the most serious impacts, cannot be mitigated if uranium mining is conducted at the Canyon Mine site."

Consultation with the Tribe ended in March 2013, when the Tribe and the Trust jointly filed suit against the Forest

Service in the district court. Energy Fuels intervened as a defendant.

As amended, the complaint asserted four claims under the Administrative Procedure Act ("APA"):

1.  the Forest Service's determination that Energy Fuels had valid existing rights to operate the Canyon Mine notwithstanding the January 2012 withdrawal was a "major federal action significantly affecting the environment," and, therefore, the service violated the NEPA by not preparing an EIS in connection with its determination;

2.  the Forest Service's determination was an "undertaking," and, therefore, the service violated the NHPA by not conducting a full consultation under section 106 in connection with its determination;

3.  alternatively, the Forest Service violated the NHPA by not properly updating its original section 106 analysis to account for the impact on Red Butte; and

4.  the Forest Service violated several federal laws by failing to take various costs into account in its determination that Canyon Mine could be operated at a profit.

As relief, the plaintiffs sought a declaration that the Forest Service was acting in violation of the NEPA, the NHPA and other laws; an order setting aside any "approvals or authorizations" for operations at Canyon Mine; and an injunction prohibiting "any further uranium exploration or mining-related activities at the Canyon Mine unless and until the Forest Service fully complies with all applicable laws."

The parties cross-moved for summary judgment. In an order dated April 7, 2015, the district court held (1) that the plaintiffs had Article III standing, (2) that the plaintiffs lacked prudential standing with respect to their fourth claim, and (3) that the Mineral Report—which the district court referred to as the "VER [Valid Existing Rights] Determination"—was a final agency action subject to review under the APA. *See Grand Canyon Tr. v. Williams*, 98 F. Supp. 3d 1044, 1055–61 (D. Ariz. 2015). Turning to the merits, the district court held (1) that the Mineral Report was not a "major federal action" requiring an EIS under the NEPA; (2) that the report was not an "undertaking" requiring a full section 106 consultation under the NHPA; (3) that the Forest Service's decision to consider the effect on Red Butte under 36 C.F.R. § 800.13(b)(3) was reasonable; and (4) that the Forest Service had complied with that regulation. *See id.* at 1062–73.[1]

Both the Tribe and the Trust timely appealed.

## II

The Forest Service argues that we lack jurisdiction because its determination that Energy Fuels has valid existing rights was not a final agency action. *See Ukiah Valley Med. Ctr. v. FTC*, 911 F.2d 261, 266 (9th Cir. 1990) ("'[F]inal agency action' is a jurisdictional requirement imposed by

---

[1] The district court also rejected the defendants' argument that two of the plaintiffs' claims were barred by collateral estoppel. *See Grand Canyon Tr.*, 98 F. Supp. 3d at 1061–62. That ruling has not been challenged on appeal.

[5 U.S.C. § 704].").**[2]** We review this threshold issue de novo. *See Minard Run Oil Co. v. U.S. Forest Serv.*, 670 F.3d 236, 247 (3d Cir. 2011).**[3]**

"'[A]gency action' includes the whole or a part of an agency rule, order, license, sanction, relief or the equivalent or denial thereof, or failure to act[.]" 5 U.S.C. § 551(13). "[R]elief," in turn, includes the "recognition of a claim, right, immunity, privilege, exemption, or exception." *Id.* § 551(11)(B).

The Forest Service claims that it has no authority to recognize mining rights, and that the Mineral Report represents only the agency's "opinion" as to their validity.

---

**[2]** The Supreme Court recently reminded courts that "[o]nly Congress may determine a lower federal court's subject-matter jurisdiction." *Hamer v. Neighborhood Hous. Servs. of Chi.*, No. 16-658, at 1 (U.S. Nov. 8, 2017) (quoting *Kontrick v. Ryan*, 540 U.S. 443, 456 (2004)). Since the final agency action requirement is statutory, *Hamer* does not call into question its status as a jurisdictional limitation.

**[3]** In the district court, the Forest Service further argued that the plaintiffs lacked Article III standing. It has not pursued that argument on appeal, but we are satisfied that the plaintiffs have suffered injuries in fact that are fairly traceable to the Service's actions and that could be redressed by a favorable judicial determination. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). Continued uranium mining at Canyon Mine causes concrete injury to the Tribe's religious and cultural interests and the Trust's aesthetic and recreational interests. While the parties dispute whether continued mining required the Forest Service's approval, we must assume that it did in assessing standing. *See Equity Lifestyle Props., Inc. v. Cty. of San Luis Obispo*, 548 F.3d 1184, 1189 n.10 (9th Cir. 2008) ("The jurisdictional question of standing precedes, and does not require, analysis of the merits."). If the Tribe and Trust are correct that continued mining required approval, then their injuries are fairly traceable to that approval and could be redressed by setting it aside.

But whether or not the Mineral Report was legally required, it was prepared. Its conclusion that Energy Fuels had valid existing rights at the time of the withdrawal falls within the plain meaning of "recognition of a claim."

We further conclude that the Mineral Report was final. "As a general matter, two conditions must be satisfied for agency action to be 'final[.]'" *Bennett v. Spear*, 520 U.S. 154, 177 (1997). "First, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature." *Id.* at 177–78 (citation and internal quotation marks omitted). It is true that the final decision to *contest* a claim of existing rights rests with the Department of the Interior's Bureau of Land Management ("BLM"). *See Best v. Humboldt Placer Mining Co.*, 371 U.S. 334, 336 (1963). If, however, the Forest Service finds a claim is valid, nothing else happens. The district court sensibly described that outcome as "the Forest Service's 'last word' on the validity of the Canyon Mine mineral rights," *Grand Canyon Tr. v. Williams*, 38 F. Supp. 3d 1073, 1078 (D. Ariz. 2014), and we agree with that description.

In addition, to be final, "the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett*, 520 U.S. at 178 (internal quotation marks omitted). Rights to a mineral deposit on public land are not *conferred* by agency action; they are acquired by the miner's own actions of location and discovery. *See American Law of Mining* § 4.11 (2d ed. 1997) ("[The prospector] may seek 'valuable minerals' and, if he finds them, may initiate a vested right without the approval of anyone else, including representatives of the government that owns the land."). Nevertheless, the Mineral Report

*determined* that such rights existed with respect to Canyon Mine, and that is all *Bennett* requires.

We have observed that "courts consider whether the practical effects of an agency's decision make it a final agency action, regardless of how it is labeled." *Columbia Riverkeeper v. U.S. Coast Guard*, 761 F.3d 1084, 1094–95 (9th Cir. 2014). We therefore focus on both the "practical and legal effects of the agency action," and define the finality requirement "in a pragmatic and flexible manner." *Or. Nat. Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 982 (9th Cir. 2006) (citations omitted). We agree with the district court's assessment that the Mineral Report was a practical requirement to the continued operation of Canyon Mine because "the Forest Service, Energy Fuels, and interested tribes all understood that mine operations would not resume until the VER Determination was completed." *Grand Canyon Tr.*, 38 F. Supp. 3d at 1079.

### III

The challenges to the merits of the district court's judgment raise three issues: (A) Was the Mineral Report a "major federal action" under the NEPA? (B) Did the Mineral Report approve an "undertaking" under the NHPA? (C) Did the Trust fall within the zone of interests of either the Federal Land Policy and Management Act of 1976 ("FLPMA") or the General Mining Act of 1872 ("Mining Act")? Our review of each question is de novo. *See N. Cheyenne Tribe v. Norton*, 503 F.3d 836, 845 (9th Cir. 2007) (compliance with NEPA and NHPA on summary judgment); *Mills v. United States*, 742 F.3d 400, 406 (9th Cir. 2014) (zone of interests).

## A. NEPA

We have held that "where a proposed federal action would not change the status quo, an EIS is not necessary." *Upper Snake River Chapter of Trout Unlimited v. Hodel*, 921 F.2d 232, 235 (9th Cir. 1990). Nor is an EIS necessary to "discuss the environmental effects of mere continued operation of a facility." *Burbank Anti-Noise Grp. v. Goldschmidt*, 623 F.2d 115, 116 (9th Cir. 1980). We applied those general principles in *Center for Biological Diversity v. Salazar*, 706 F.3d 1085 (9th Cir. 2013) ("*CBD*").

At issue in *CBD* was the resumption of mining at a uranium mine, "after a seventeen-year hiatus, under a plan of operations that BLM approved in 1988." 706 F. 3d at 1088. We held that "no regulation requires approval of a new plan of operations before regular mining activities may recommence following a temporary closure." *Id.* at 1093. We further held that the original approval of the plan was a major federal action, but that "that action [wa]s completed when the plan [wa]s approved." *Id.* at 1095 (quoting, with alterations, *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 73 (2004)). By contrast, in *Pit River Tribe v. United States Forest Service*, 469 F.3d 768 (9th Cir. 2006), we held that a lease extension was a major federal action that altered the status quo because without it, the lessee would not have been able to continue operating a power plant on the leased property. *See id.* at 784.

The district court correctly held that *CBD*, not *Pit River*, governs this case. As in *CBD*, the original approval of the plan of operations was a major federal action. And as in *CBD*, that action was complete when the plan was approved. Unlike *Pit River*, resumed operation of Canyon Mine did not

require any additional government action.  Therefore, the EIS prepared in 1988 satisfied the NEPA.

## B.  NHPA

As we explained, the NHPA requires consultation pursuant to section 106 prior to any "undertaking." 54 U.S.C. § 306108.  As pertinent here, "'undertaking' means a project, activity, or program funded in whole or in part under the direct or indirect jurisdiction of a Federal agency, including . . . those requiring a Federal permit, license, or approval[.]" *Id.* § 300320(3).  Here, too, we agree with the district court that the Mineral Report did not "permit, license, or approv[e]" resumed operations at Canyon Mine; it simply acknowledged the continued vitality of the original approval of the PoO.  Just as that approval was the only "major federal action" requiring an EIS under the NEPA, it was the only "undertaking" requiring consultation under the NHPA.

The Tribe concedes that the approval process in 1986 included the necessary consultation, and that the cultural and religious impacts on Red Butte were not included because they were not required to be at that time.  It argues, however, that the NHPA imposes a continuing obligation on federal agencies to address the impact on historic property at any stage of an undertaking.

The statutory definition of "undertaking" dates from 1992.  Prior to that, it was defined by the Advisory Council on Historic Preservation ("ACHP"), the agency charged with implementing the NHPA, to include "continuing projects, activities, or programs and any of their elements not previously considered under section 106."   36 C.F.R. § 800.2(o) (1991).  But that definition was superseded by

54 U.S.C. § 300320(3), which omits the reference to continuing projects. The regulatory definition now conforms to the statutory definition. *See* 36 C.F.R. § 800.16(y). We therefore disagree with the Tribe that the current definition of "undertaking" encompasses a continuing obligation to evaluate previously approved projects.

Although continuing obligations have been removed from the definition of "undertaking," they remain in 36 C.F.R. § 800.13(b):

> If historic properties are discovered or unanticipated effects on historic properties found after the agency official has completed the section 106 process . . . , the agency official shall make reasonable efforts to avoid, minimize or mitigate adverse effects to such properties and:
>
> (1) If the agency official has not approved the undertaking or if construction on an approved undertaking has not commenced, consult to resolve adverse effects pursuant to § 800.6; or . . .
>
> (3) If the agency official has approved the undertaking and construction has commenced, determine actions that the agency official can take to resolve adverse effects, and notify the [state or tribal historical office], any Indian tribe . . . that might attach religious and cultural significance to the affected property, and the [Advisory Council on Historic Preservation] within 48 hours of the

discovery. The notification shall describe the agency official's assessment of National Register eligibility of the property and proposed actions to resolve the adverse effects. The . . . Indian tribe . . . and the Council shall respond within 48 hours of the notification. The agency official shall take into account their recommendations regarding National Register eligibility and proposed actions, and then carry out appropriate actions. The agency official shall provide the . . . Indian tribe . . . and the Council a report of the actions when they are completed.

As noted, the Forest Service concluded that this regulation applied to Canyon Mine. It further concluded that subsection (3) applied because construction had begun in the early 1990s, although it acknowledged that the 20-year hiatus presented a "somewhat unusual situation."

The Tribe objects that Red Butte was not a newly discovered historic property—and that the effect of operating a uranium mine near it was not unanticipated—because it had informed the Forest Service of the religious and cultural significance of this site decades earlier. While that is true, the Tribe does not dispute that Red Butte was not a "historic property" eligible for inclusion on the National Register until 2010. As a result, the NHPA did not obligate the Forest Service to take the site into account when it conducted a full section 106 consultation in 1986. And while we agree that eligibility for inclusion on the National Register is not exactly a "discovery," there is no other regulation requiring an agency to consider the impact on newly eligible sites after an undertaking is approved. In other words, by invoking

§ 800.13(b), the Forest Service may have given the Tribe more than it was entitled to demand.

The Tribe further argues that *if* § 800.13(b) applies, the Forest Service should have proceeded under § 800.13(b)(1), instead of § 800.13(b)(3). In sum, the agency must engage in a full section 106 consultation if it "has not [yet] approved the undertaking or if construction on an approved undertaking has not [yet] commenced." 36 C.F.R. § 800.13(b)(1). If, however, the agency "has approved the undertaking and construction has commenced," it can engage in a simplified process to "determine actions that the agency official can take to resolve adverse effects." *Id.* § 800.13(b)(3).

Canyon Mine fits squarely within the scope of subsection (3). The mine was approved in 1988, and construction of the surface facilities began shortly thereafter. The Tribe argues that subsection (3) was intended to address emergency situations, but there is no express limitation to such situations.**[4]**

---

**[4]** In a letter to the Forest Service, the ACHP opined that subsection (3) applies "where construction activities have begun and would be ongoing, and thus, the agency had limited time and opportunity for consultation." Normally, an agency's interpretation of its own ambiguous regulation is "controlling unless plainly erroneous or inconsistent with the regulation." *Auer v. Robbins*, 519 U.S. 452, 461 (1997) (internal quotation marks omitted). Subsection (3) is not ambiguous. Moreover, the letter was motivated by a concern that proceeding under subsection (3) "would continue the unproductive conflict between the Forest Service and the Indian tribes that consider Red Butte a sacred place." We agree with the district court that the letter "appears to be more tactical advice than an interpretation of the regulation." *Grand Canyon Tr.*, 98 F. Supp. 3d at 1070.

Finally, the Tribe briefly argues that the Forest Service did not comply with § 800.13(b)(3).  Having reviewed the record, we conclude that the Forest Service made a good-faith effort to ascertain steps it could take to resolve the possible adverse effects of mining on Red Butte.  If that effort was not successful, it is because the Tribe insisted on a full consultation under section 106, which was not legally required, and a complete ban on mining around Red Butte, which the Forest Service lacks the authority to impose.

## C.  FLPMA and Mining Act

The plaintiffs' fourth claim, advanced by the Trust, challenged the merits of the Forest Service's conclusion that Energy Fuels had valid existing rights predating the withdrawal because its predecessors-in-interest had discovered a deposit of uranium ore that could be "mined, removed, transported, milled and marketed at a profit."  The district court did not address this claim, instead holding that the Trust lacked prudential standing to make it.  *See Grand Canyon Tr.*, 98 F. Supp. 3d at 1058–60.

"[A] person suing under the APA must satisfy not only Article III's standing requirements, but an additional test: The interest he asserts must be arguably within the zone of interests to be protected or regulated by the statute that he says was violated."  *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v . Patchak*, 567 U.S. 209, 224 (2012) (internal quotation marks omitted).[5]  We agree with the

---

[5] As the district court's language reflects, the additional test was, until recently, described as a matter of "prudential standing."  *See Match-E-Be-Nash-She-Wish*, 567 U.S. at 224–28.  But in *Lexmark International, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014), the Supreme

district court that the Trust's fourth claim falls outside the Mining Act's zone of interests. *See Grand Canyon Tr.*, 98 F. Supp. 3d at 1059 (explaining that the Mining Act's obvious intent was "to reward and encourage the discovery of minerals that are valuable in an economic sense," and that the Trust's interests are environmental and historical, but not economic).

However, the Trust also argued that the Forest Service's VER determination violated the FLPMA. The district court did not address the FLPMA's zone of interests in its analysis, concluding that "the sections of the [FLPMA] to which Plaintiffs cite do not relate to validity determinations or mineral examinations . . . . and do not provide the Court with any relevant law to apply in deciding claim four." *Id.* at 1059 n.8. It is true, of course, that the plaintiff must fall within the zone of interests of the "statutory provision whose violation forms the legal basis of his complaint." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 883 (1990). However, we conclude that the FLPMA, and not the Mining Act, forms the legal basis of the Trust's fourth claim.

We described the FLPMA at length in *National Mining Association*. *See* 877 F.3d at 845. Relevant here, the FLPMA

---

Court called that description "misleading," *id.* at 125, and "in some tension with . . . the principle that a federal court's obligation to hear and decide cases within its jurisdiction is virtually unflagging," *id.* at 126 (internal quotation marks and citations omitted). It held that the zone-of-interests inquiry instead asks "whether a legislatively conferred cause of action encompasses a particular plaintiff's claim," *id.* at 127, or, in the APA context, whether a plaintiff's interests "are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress authorized that plaintiff to sue," *id.* at 130 (internal quotation marks and citations omitted).

confers on the Secretary authority to withdraw federal lands for specified purposes, 43 U.S.C. § 1701(a)(4), but makes that authority "subject to valid existing rights." Pub. L. 94-579, § 701(h), 90 Stat. 2743, 2786 (1976). Thus, the VER determination that the Trust challenges in this case was made to decide whether Canyon Mine would be subject to a withdrawal made pursuant to the FLPMA.

Here, the Forest Service looked to the Mining Act to make its VER determination. However, that does not conclusively establish that the Mining Act, and not the FLPMA, forms the "legal basis" of the Trust's fourth claim. Had Energy Fuels claimed rights of a different nature, the Forest Service would have consulted a different statutory scheme, but it still would have made a VER determination. Regardless of the statute consulted, a VER determination affects whether activities on federal land can be limited under the FLPMA. *See* 43 U.S.C. § 1703(j) (stating that the purpose of a withdrawal is to "limit[] activities . . . in order to maintain other public values"). That question implicates the Trust's asserted environmental concerns.

In sum, the Forest Service applied the relevant standards from the Mining Act to make its VER determination, but the Trust's claim that Canyon Mine should not be exempt from the withdrawal because the VER determination was in error remains a claim under the FLPMA. And since the Trust's claim seeks to vindicate some of the same concerns that underlie the Secretary's withdrawal authority, it falls within the statute's zone of interests. *See W. Watersheds Project v. Kraayenbrink*, 632 F.3d 472, 485–86 (9th Cir. 2011) (plaintiffs' environmental interests fell within the NEPA and the FLPMA's zone of interests); *Desert Citizens Against Pollution v. Bisson*, 231 F.3d 1172, 1179 (9th Cir. 2000)

(plaintiffs' aesthetic and recreational interests fell within the FLPMA's zone of interests).

## IV

With respect to the claims under the NEPA and NHPA, the judgment of the district court is **AFFIRMED**.  With respect to the claim under the FLPMA, the judgment is **VACATED** and the case is **REMANDED** for consideration of the claim on the merits.